DANIEL G. BOGDEN
United States Attorney
KATHLEEN BLISS
NICHOLAS D. DICKINSON
Assistant United States Attorneys
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336 (Telephone)
(702) 388-6418 (Fax)

Counsel for the United States

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TERRANCE THOMAS, ) <br> ) <br> Defendant. ) | GOVERNMENT'S TRIAL BRIEF <br> 2:08-cr-00283-RCJ-RJJ <br><br> (The Honorable United States District Court Judge Lloyd D. George, presiding) |

TRIAL BRIEF FOR THE UNITED STATES

The United States submits its trial brief to the Court, addressing legal and evidentiary issues that may arise at trial. This brief also includes the government's list of witnesses and exhibits, with electronic copies submitted along with the government's proposed jury instructions directly to the Clerk of the Court and to Chambers for the Court's convenience.

I. INTRODUCTION

A federal grand jury sitting in the District of Nevada, Las Vegas, returned an Indictment against defendant Terrance Thomas on October 28, 2008, (Doc. 1), charging him and nine others – Delvin Ward, Anthony Mabry, Markette Tillman, DeMichael Burks,

Jacorey Taylor, Fred Nix, Sebastion Wigg, Reginald Dunlap and Steven Booth – in Count One with Conspiracy to Engage in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. § 1962(d). Defendant Thomas also was charged with the same nine defendants, in Count Nine, Drug Conspiracy, in violation of 21 U.S.C. § 846. Finally, defendant Thomas was charged with Drug Trafficking, in violation of 21 U.S.C. § 841, in Count Twenty-Two (with Delvin Ward), Count Twenty-Four, and Count Thirty-Two. At the time of this filing, the Government has submitted a redacted Indictment and will move to motion to strike the Street Gangs Special Finding against defendant Thomas prior to trial.

The government's case is summed up as follows. The government alleges that defendant Thomas associated with a criminal enterprise known as the Playboy Bloods for the purpose of manufacturing and distributing illegal drugs; that is, crack cocaine. Defendant Thomas operated a drug house at 1003 Silverman to conduct the drug operation, which is one of the racketeering activities of the Playboy Bloods.

The government has provided notice that it will seek to introduce the testimony of expert witnesses, electronic evidence, enterprise acts, and its exhibit list, which have been filed as separate documents in this case. The government has provided to defense counsel draft proposed instructions. It is anticipated that the parties will ask leave of the Court to file agreed upon instructions so that the parties may have sufficient time to meet and confer.

The government stands ready for trial, commencing on March 9, 2010, with an anticipated duration of four days. Defendant is in custody.

## II. THE CHARGES

A.   CONSPIRACY TO ENGAGE IN A RACKETEER INFLUENCED CORRUPT ORGANIZATION, IN VIOLATION OF 18 U.S.C. § 1962(d)

2

The government must prove the following elements beyond a reasonable doubt to support a conviction of a defendant:

The essential elements for the crime of Conspiracy to commit RICO, in violation of 18 U.S.C. § 1962 (d), and as charged in Count One of the Indictment, are the following:

First:  the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity;

Second:  an enterprise would be established as alleged in the Indictment;

Third:  the enterprise would be engaged in, or its activities would affect, interstate or foreign commerce;

Fourth:  the defendant would be employed by, or associated with, the enterprise.

9th Cir. Crim. Jury Instr. 8.16 (2003); Boyle v. United States, 129 S.Ct. 2237, 2242 (2009); Salinas v. United States, 522 U.S. 52, 62-65 (1997); United States v. Fernandez, 388 F.3d 11991230 (9th Cir. 2004); United States v. Glecier, 923 F.2d 496, 499-500 (7th Cir. 1991); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Phillips, 874 F.2d 123, 125-28 (3d Cir. 1989).

The essence of a conspiracy under 18 U.S.C. § 1962(d) is the agreement. OKI Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 774-75 (9th Cir. 2002 (holding "[i]t is the mere agreement to violate RICO that 1962(d) forbids; it is not necessary to prove that any substantive RICO violations ever occurred as a result of the conspiracy."). A conspiracy under RICO, which operates broadly, does not require that the conspirator agreed to commit or facilitate the substantive offense. Salinas, 522 U.S. at 62-65. Moreover, adopting liability under Pinkerton v. United States, 328 U.S. 640, 646 (1946), the Court observed that "[t]he partners in the criminal plan must agree to pursue the same

3

criminal objective and may divide up the work, yet each is responsible for the acts of each other." Salinas, 522 U.S. at 62-65; see OKI Semiconductor Co., 298 F.3d at 774-75("If a RICO conspiracy is demonstrated, all conspirators are liable for the acts of their co-conspirators."); see also Shyrock, 342 F.3d at 986 (no error in giving Pinkerton instruction). No overt act is required to satisfy a RICO conspiracy. Salinas, 522 U.S. at 62-65. The government is not required to prove that each conspirator agreed that he would be the one to commit two predicate acts. Id. It is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy. OKI Semiconductor, 298 F.3d at 775. The agreement to violate RICO "need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." Id. In addition, the government need not prove that a defendant actually conspired to operate or manage the enterprise himself. Fernandez, 388 F.3d at 1229-30. (upholding a defendant's RICO conspiracy conviction based on evidence that the defendant, an enterprise member's wife, collected money for the enterprise, passed notes to facilitate enterprise members' communication, and smuggled drugs into the prison). As the Seventh Circuit observed, "[T]o require the government to show that all of the alleged conspirators conducted, or participated in the conduct of, the affairs of the racketeering enterprise to the extent mandated by a § 1962(c) or other substantive RICO offense would entail 'a degree of involvement in the affairs of the conspiracy that is not required in any other type of conspiracy, where agreeing to a prescribed objective is sufficient.'" United States v. Quintanilla, 2 F.3d 1469, 1484-85 (7th Cir. 1993) (quoting United States v. Neapolitan, 791 F.2d 489, 498 (7th Cir. 1986).

      1.    The Playboy Bloods as an Enterprise

In proving a violation of RICO, the government must establish beyond a reasonable doubt that the Playboy Bloods acted as a criminal enterprise during the time

4

period charged in the Indictment, from at least 1999 up through and including the date of the Indictment, October 28, 2008.  In doing so, the government must prove at least one of the purposes of the Playboy Bloods enterprise:

  A. to enrich the members and associates of the enterprise through the trafficking of illegal drugs, primarily cocaine base, also known as crack cocaine;

  B. to preserve and protect the power, territory, and profit of the enterprise through the use of violence, intimidation, threats, robbery and acts involving murder;

  C. to create, maintain, and control a marketplace for the distribution of controlled substances;

  D. to protect the enterprise and its members from detection, apprehension and prosecution by law enforcement;

  E. to prevent, thwart, and retaliate against acts of violence perpetrated by rivals against the enterprise and its members; and

  F. to promote, enhance and maintain the reputation and standing of the enterprise and its members.

  The government must also establish to the jury that at least one of the means and methods of the Playboy Bloods as an enterprise, included the following:

  A. Members of the enterprise and their associates have used, attempted to use, and conspired to use extortion, which affected interstate commerce.

  B. Members of the enterprise and their associates have committed, attempted and threatened to commit acts of violence, including murder, robbery and extortion, to protect and to expand the enterprise's criminal operations;

  C. Members of the enterprise and their associates have promoted a climate of fear through violence and threats of violence.

       D.    Members of the enterprise and their associates have used and threatened to use physical violence against various individuals.

       E.    Members of the enterprise and their associates have trafficked in crack cocaine, marijuana and guns.

In Boyle, the Supreme Court recently explained that an "association-in-fact" enterprise is simply "a continuing unit that functions with a common purpose." Putting to rest many notions and arguments about the scope and breadth of a RICO enterprise, the Court explained:

> Such a group need not have a hierarchical structure of a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods–by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

129 S.Ct. At 2245-46.

In addition, the Ninth Circuit, has "flatly rejected" the argument that internal disputes within an enterprise somehow demonstrate lack of continuity or signal the end of the enterprise. Fernandez, 388 F.3d at 1222-23. ("[t]he existence of an internal dispute does not signal the end of an enterprise, particularly if the objective of and reason for, the dispute, is control of the enterprise." (citation omitted).

    2.    Proof of Racketeering Activity

In this case, the government alleges that defendant Thomas engaged in drug trafficking activity, including conspiracy, with the Playboy Bloods. Specifically, as provided

in the Indictment, Thomas' role was that of "an associate of the Playboy Bloods who aids and assists O.G. members of the enterprise, including **Ward**, in manufacturing and distributing narcotics, including operating drug houses within Playboy Bloods turf." Doc. 1 at 6.

Drug trafficking is clearly a racketeering activity under 18 U.S.C. § 1961(1). Proof of drug trafficking, in violation of 21 U.S.C.§ 841, requires evidence that:

> First:   Defendant knowingly possessed a controlled substance, in this case, methamphetamine, marijuana, and heroin;
>
> Second:  Defendant possessed it with the intent to deliver it to another person.

9th Cir. Crim. Jury Instr. 9.13 (West 2003).

A defendant conspires to engage in drug trafficking, as charged in Count One and in Count Nine of the Indictment, when a defendant agrees with one or more persons to manufacture or distribute or possess with intent to distribute a controlled substance, and the defendant becomes a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. 9th Cir. Crim. Jury Instr. 8.16.

### III. EVIDENTIARY ISSUES

A.   Gang Evidence

The government has filed a notice of enterprise acts (evidence surrounding two prior drug convictions and guilty pleas (admissions) by defendant Thomas) that it will seek to introduce at trial and incorporates herein the facts, law and authority cited in that brief. (Doc. 308). Other evidence of the Playboy Bloods enterprise includes testimony about gang colors and tattoos, gang structure and hierarchy and the identification of members and associates.

Evidence of gang affiliation through the presentation of tattoos, colors and identification by other or former members is relevant to proof of the enterprise and defendants' roles in it, and may be admissible for other reasons material to the case, including proof of conspiracy.  See United States v. Abel, 469 U.S. 45, 49 (1984)  (to show bias); United States v. Hankey, 203 F.3d 1160, 1171-73 (9th Cir. 2000) ( to bias and coercion); United States v. Easter, 66 F.3d 1018, 1021 (9th Cir. 1995) (to show identity and to link mastermind to the crime); United States v. Santiago, 46 F.3d 885, 889 -90 (9th Cir. 1995) (to show motive for crime); United States v. Fagan, 996 F.2d 1009, 1015 (9th Cir. 1993) (to show police officer's ability to identify defendant).

It is well-established law that Rule 404(b)  is inapplicable where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment. United States v. DeGeorge, 380 F.3d 1203,  1219-20 (9th Cir. 2004);   United States v. Lillard, 354 F.3d 850, 854 (9th Cir. 2003); see United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993) ("Evidence should not be considered 'other crimes' evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined."); United States v. Soliman, 813 F.2d 277, 279 (9th Cir.1987); see also United States v. Hite, 364 F.3d 874, 881-882 (7th Cir. 2004) ("'evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of "other acts" within the meaning of Fed. R. Evid. 404(b).'") (quoting United States v. Ramirez, 45 F.3d 1096, 1102 (7th Cir.1995), rev'd on other grounds.  This "inextricably intertwined" exception "applies when (1) 'particular acts of the defendant are part of ... a single criminal transaction,' or when (2) ' "other act" evidence ... is necessary [to admit] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" United States v. Beckman, 298 F.3d 788, 793-94 (9th Cir. 2002) (quoting United States v.

Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir.1995)); see also United States v. Ojomo, 332 F.3d 485, 489 (7th Cir. 2003) ("Acts satisfy the inextricably intertwined doctrine if they are necessary to 'complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime.'") (quoting United States v. Senffner, 280 F.3d 755, 764 (7th Cir.2002)).

The Ninth Circuit has explained, "'The jury cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'" United States v. Daly, 974 F.2d 1215, 1216 (9th Cir.1992) (quoting United States v. Moore, 735 F.2d 289, 292 (8th Cir.1984)).

In an enterprise case, the inapplicability of Fed. R. Evid. 404(b) could not be clearer in that the acts directly connecting the defendants to the purpose, means and methods of the Playboy Bloods enterprise must be admitted as direct proof. See United States v. Baez, 349 F.3d 90, 93-94 (2d Cir. 2003) (rejecting defendant's claim that 16 uncharged crimes should have been excluded because "[i]t is well settled that the government may introduce evidence of uncharged offenses to establish the existence of the criminal argument. . .Moreover, where. . . a conspiracy is charged 'uncharged acts may be admissible as direct evidence of the conspiracy itself.'"))(quoting United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); Diaz, 176 F.3d at 78 (rejecting claim that evidence of prior bad acts by defendants fell under Rule 404(b) since such evidence proved enterprise and racketeering activity elements of RICO); United States v. Rolett, 151 F.3d 787, 790 (8th Cir. 1998) (concluding that, although parties treated "other act" evidence as Rule 404(b) evidence, such evidence was "intrinsic evidence," inextricably intertwined as "an integral part of the immediate context of the crime charged."); Miller, 116 F.3d at 682 (evidence of

uncharged murders evidence of enterprise that used acts of violence in furtherance of narcotics conspiracy); United States v. Krout, 66 F.3d 1420, 1425 (5th Cir. 1995) (evidence arising out of same transaction, though uncharged, no extrinsic evidence under Fed. R. Evid. 404(b) and government "not limited in its proof of a conspiracy or racketeering enterprise to the overt or racketeering acts alleged in the indictment.") (citations omitted); Thai, 29 F.3d at 812 ("uncharged acts may be admissible as direct evidence of the conspiracy itself."); Concepcion, 983 F.2d at 392 ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992) ("evidence of numerous crimes, including the routine resort to vicious and deadly force to eliminate human obstacles, was relevant to the charges against each defendant because it tended to prove the existence and nature of the RICO enterprise."), rev'd on other grounds.

Even if the Court were to conclude that the above-described evidence represents evidence under Fed. R. Evid. 404(b), the evidence should be admitted to prove motive, opportunity, intent, preparation, plan, knowledge and identity.  There is no question that the law in this Circuit provides that evidence offered under Rule 404(b) should be admitted unless it proves only criminal disposition.  See United States v. Cruz-Garcia, 344 F.3d 951, 954 (9th Cir. 2003); United States v. Castillo, 181 F.3d 1129, 1134 (9th Cir. 1999); United States v. Meling, 47 F.3d 1546 (9th Cir. 1995) (Rule 404(b) is a rule of inclusion); United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir. 1991) (prior acts evidence admissible unless evidence only tends to prove propensity); United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) ("We have uniformly recognized that the rule is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity.").

In the instant case, government witnesses will testify about their personal knowledge of the defendant: how he became involved with the Playboy Bloods and how he engaged in criminal conduct with the Playboy Bloods. The witnesses will describe Playboy Bloods turf, which is important in the context of demonstrating the marketplace for drug trafficking. The witnesses, based upon their personal knowledge, will also explain the consequences of interfering with Playboy Bloods' business and how Playboy Bloods generally protect their interests and territory.

B.   Admissions of other Defendants/Co-Conspirators

The government will seek to introduce co-conspirator statements through the statements made by Playboy Bloods operating within the drug house at 1003 Silverman Way. These members include Delvin Ward and Markette Tillman, both of whom are captured on tape as they engage in drug trafficking with defendant Thomas.

For statements to be admissible under Rule 801(d)(2)(E), the government must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) both the declarant and the person against whom the statements are offered were members of the conspiracy; (3) the statements were made during the scope of the conspiracy; and (4) the statements were made in furtherance thereof. Bourjaily v. United States, 483 U.S. 171 (1987). Co-conspirator statements are not considered testimonial and thus not subject to scrutiny under the Confrontation Clause, as explained in Crawford v. Washington, 541 U.S. 36, 56 (2004).

While the declarant must be a member of the conspiracy, the witness testifying at trial need not be a member of the conspiracy in order for a co-conspirator's statement to be admissible. See United States v. Williams, 989 F.2d 1061, 1067-69 (9th Cir. 1993) (holding that statements by co-conspirators to non-members of the conspiracy, introduced through the testimony of non-members, were admissible under Rule 801(d)(2)(E)); see also

United States v. Garcia, 16 F.3d 341, 342-44 (9th Cir. 1994) (analyzing whether the declarants, both speaking in Spanish, and not the undercover agent, who understood Spanish and who testified as to the statements at issue, were a member of the conspiracy).

In determining whether a conspiracy existed, the Court may consider the declarant's statements, Bourjaily, 483 U.S. at 180-181, along with any other evidence, including direct, circumstantial evidence. United States v. Weiner, 578 F.2d 757, 770 (9th Cir. 1978); United States v. Turner, 528 F.2d 143, 162 (9th Cir. 1975). Once a conspiracy is shown, the evidence need only show that the declarant and the defendants against whom the statements are offered had a "slight connection" to it. United States v. Silverman, 771 F.2d 1193, 1199 (9th Cir. 1985). Again, the Court may consider the declarant's statement in making this assessment. Boujaily, 483 U.S. at 180-181.

Statements made "in furtherance" of the conspiracy must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. See United States v. Kerns, 61 F.3d 1422, 1426 (9th Cir. 1995) (holding that statements made to convince a potential co-conspirator that conspiracy lucrative were in furtherance of the conspiracy); see also United States v. Yarbrough, 852 F.2d 1522 (9th Cir. 1988); United States v. Layton, 720 F.2d 548, 556 (9th Cir. 1983). Statements made to include enlistment or further participation in the group's activities are considered to be "in furtherance" of the conspiracy. United States v. Dorn, 561 F.2d 1252, 1256-57 (7th Cir. 1977) (per curium), rev'd on other grounds, United States v. Read, 658 F.2d 1225, 1236 n.6 (7th Cir. 1981). Likewise, statements made to prompt further action on the part of conspirators are admissible under 801(d)(2)(E), United States v. Kendall, 665 F.2d 126, 133 (7th Cir. 1981), as are those made to "reassure" members of the conspiracy's continued existence. United States v. Mason, 658 F.2d 1263, 1270 (9th Cir. 1981).

Casual statements, that is "off-hand, overheard remarks," made to an acquaintance are considered non-testimonial in nature, therefore, not affected by the Court's holding in Crawford dealing with testimonial statements. 541 U.S. at 51; see Leavitt v. Arave, 383 F.3d 809, 830 n.22 (9th Cir. 2004). The coconspirator statements which the government will ask the Court to admit pursuant to the co-conspirator hearsay exception will fall within almost every one of these categories.

### C. Chain of Custody

To be admitted into evidence a physical exhibit must be in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge and will not be overturned except for clear abuse of discretion. Factors the court may consider in making this determination include the nature of the item, the circumstances surrounding its preservation, and the likelihood of intermeddlers having tampered with it. See Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960).

The government need not establish all links in the chain of custody of an item or call all persons who were in a position to come into contact with it. See Gallego, 276 F.2d at 917. Alleged gaps in the chain of custody go to the weight of the evidence rather than to its admissibility. United States v. Matta-Ballasteros, 71 F.3d 754 (9th Cir. 1995).

### D. Hearsay Exceptions

Fed. R. Evid. 801 defines hearsay as a statement other than one made by the declarant while testifying at trial which is offered into evidence to prove the truth of the matter therein asserted. However, testimony is not hearsay when it is not offered to prove the truth of the matter asserted. United States v. Miller, 771 F.2d 1219, 1233 (9th Cir. 1985). Statements which provide necessary background information but are not offered for the truth of the matter asserted are admissible under Fed. R. Evid. 801(c). United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir. 1985) (such background statements are not

hearsay and properly admissible because their probative value is independent of their veracity); United States v. Gibson, 690 F.2d 697, 700-02 (9th Cir. 1982). Out-of-court statements offered for the limited purpose of explaining why a testifying witness did something is not hearsay. See United States v. Munoz, 233 F.3d 1117 (9th Cir. 2000); United States v. Becerra, 992 F.2d 960, 965 (9th Cir. 1993).

Ninth Circuit law is clear that documents seized from a defendant are properly admissible against him. The documents are admissible as non-hearsay because the United States does not intend to introduce them to prove the truth of the matter asserted. See United States v. Abascal, 564 F.2d 821, 830 (9th Cir. 1977).

Finally, tape-recorded conversations between defendant and the CS and the government agent are not hearsay or testimonial. See United States v. Kenny, 645 F.2d 1323, 1339-40 (9th Cir. 1981).

E. Expert Witness Testimony

The government will call several witnesses who performed drug analysis on items purchased from or related to defendant Thomas, and who will testify that the items consist of a substance or mixture containing cocaine base, also know as crack cocaine. If necessary, the government is also prepared to introduce evidence that the recordings, enhanced for clarity, are unchanged in content and substance. Their opinions are admissible pursuant to Fed. R. Evid. 702, which provides, in pertinent part:

> If . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

14

This Court must first ensure, under its gatekeeper function, whether the proffered expert testimony "'rests on a reliable foundation and is relevant to the task at hand.'" United States v. Hermanek, 289 F.3d 1076, 1093 (9th Cir. 2002), rev'd on other grounds, (quoting Daubert v. Merrell Dow Pharm., Inc, 509 U.S. 579, 597 (1993)).  The gatekeeping role of the trial court also applies where the proffered testimony is "non-scientific." United States v. Prime, 431 F.3d 1147, 1152 (9th Cir 2004). The trial court is entrusted with "broad discretion and flexibility" in analyzing the facts of each case before it.  Id. at 1033 (citations omitted).

Expert witness testimony may be admissible, including an expert's reasonable reliance on hearsay, to explain linguistics, codes of conduct and other specialized knowledge. See United States v. Decloud, 456 F.996, 1013014 (9th Cir. 2006) (expert testimony regarding coded language used in drug trade properly admitted); United States v. Gonzales, 307 F.3d 906, 911-12 (9th Cir. 2002) (no abuse of discretion where expert testimony allowed concerning drug trafficking); United States v. Hankey, 203 F.3d 1160, 1169-70 (9th Cir. 2000) (officer properly testified in rebuttal as gang expert about membership and tenets of gangs based on "street intelligence": "How else can one obtain this encyclopedic knowledge of identifiable gangs?").

## IV.   JURY SELECTION

Defendant may seek to exercise peremptory challenges of potential jurors who are of a racially or ethnically different group. Or defendant may challenge the government's exercise of its peremptory challenges.  Excluding members of the venire based on a prospective juror's race violates the Equal Protection Clause of the Constitution. Batson v. Kentucky, 476 U.S. 79, 85-87 (1986). The Constitution forbids striking even a single prospective juror for a discriminatory purpose. United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir.1994). Accordingly, defense counsel is also prohibited from exercising a

15

peremptory challenge to strike a prospective juror on the basis of race. Georgia v. McCollum, 505 U.S. 42, 54-55 (1992).

A Batson challenge involves a three-part test. First, the opponent of the peremptory challenge must make a prima facie showing that the challenge was based on the race of the prospective juror. Batson, 476 U.S. at 96-97. Second, the party exercising the peremptory challenge must offer a race-neutral basis for the peremptory challenge. Id. at 97-98. Third, the court must determine whether the opponent of the peremptory challenge has shown that the party exercising the challenge engaged in "purposeful discrimination." Id. at 98.

Step one requires the district court to determine whether there is a prima facie case of racial discrimination. United States v. Esparza-Gonzalez, 422 F.3d 897, 901 (9th Cir.2005). However, once the party exercising a peremptory challenge offers a race-neutral explanation for the challenge (as required by Batson prong two), the preliminary issue whether the party asserting the Batson claim has made a prima facie showing (under Batson prong one) becomes moot. See Hernandez v. New York, 500 U.S. 352, 359 (1991).

Under step two of Batson, the party making the peremptory challenge, has the burden of stating a race-neutral explanation for the challenge.  Unless a discriminatory intent is inherent in the stated explanation for the peremptory challenge, the reason offered will be deemed race-neutral. Stubbs v. Gomez, 189 F.3d 1099, 1105 (9th Cir.1999).  For purposes of Batson step two, the explanation need not be "persuasive, or even plausible." Purkett v. Elem, 514 U.S. 765, 768 (1995).

The final step requires the trial court to determine whether the party making the Batson claim has established that the party exercising the suspect peremptory challenge engaged in purposeful discrimination.   The trial court must evaluate here the

1  "persuasiveness" of the stated reason or reasons for the challenge. See Purkett, 514 U.S.
2  at 768.
3  . . .
4  . . .
5  . . .

## V.  WITNESSES AND EXHIBIT LIST

The United States provided its exhibit list on this date in a separate filing. Witnesses that the government may call in its case-in-chief, and in the order anticipated, are hereby listed, with additional information that the Court may find useful.

1) Gary McCamey (Tuesday p.m. (no trial on Wednesday) - Thursday a.m.) (law enforcement)

2) Cooperator 1 (identified in the materials provided to defendant under the protective order (Thursday a.m.)

3) Cooperator 2 (identified in the materials on this date provided to defendant under the protective order) (Thursday (late morning)/Friday)

4) Jason Bordelon (Friday) (expert witness, drug analysis)

5) Rob Zanolli (Tuesday (3/16)) (law enforcement)

6) Scott Bakken (Tuesday) (law enforcement)

7) Michael Harding (Tuesday) (law enforcement)

8) William Giblin (Tuesday) (law enforcement)

9) Robert Kinch (Tuesday) (law enforcement)

10) Carson Daly (Tuesday) (expert witness, tape enhancements)

11) Thomas Melville (Tuesday) (expert witness, drug analysis)

. . .
. . .

1  . . .
2  . . .
3  . . .
4  . . .
5  . . .

## V.  JURY INSTRUCTIONS

The United States' proposed jury instructions will be submitted under separate cover. We respectfully request that the Court give any general instructions it deems necessary and grant the government leave to file supplemental instructions if so warranted.

**DATED** this 4th day of March 2010.

Respectfully Submitted,

DANIEL G. BOGDEN
United States Attorney

/s/

KATHLEEN BLISS
NICHOLAS D. DICKINSON
Assistant United States Attorneys