# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>   )<br>             Plaintiff, )<br>   )<br>   vs. )<br>   )<br>DELVIN WARD et al., )<br>   )<br>             Defendants. )<br>_____ ) | 2:08-cr-00283-RCJ-RJJ<br><br>**ORDER** |

    This case arises out of an alleged racketeering and drug trafficking conspiracy, including two related murders. Six of the ten indicted Defendants have pled guilty to various charges. The four remaining Defendants—Jacory Taylor, Reginald Dunlap, Steven Booth, and Markette Tillman (collectively, "Defendants")—await trial. The Attorney General has declined to pursue the death penalty against Defendants, though one or more charged offenses is death-penalty-eligible. The Court has set the Taylor–Dunlop–Booth trial for February 6, 2012 and the Tillman trial for April 23, 2012. The parties have jointly moved to continue both trials for at least six weeks. A hearing on that motion is set for December 2, 2011, and the Court will not address it in the present order. Pending before the Court for current resolution are Dunlap's and Booth's separate motions to sever their trials both from Taylor's and from one another's. For the reasons given herein, the Court denies the motions.

///

**I.     LEGAL STANDARDS**

"If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

> [A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. . . . [L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.
>
> . . . .
>
> [D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials

*Zafiro v. United States*, 506 U.S. 534, 539–40 (1993).

> Mere inconsistency in defense positions is insufficient to find codefendants' defenses antagonistic. Inconsistency, alone, seldom produces the type of prejudice that warrants reversal. The probability of reversible prejudice increases as the defenses move beyond the merely inconsistent to the antagonistic.
>
> . . . .
>
> Mutually exclusive defenses are said to exist when acquittal of one codefendant would necessarily call for the conviction of the other.

*United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991) (citations omitted).

**II.     ANALYSIS**

Booth has been indicted on six of the thirty-two counts in the Indictment: (1) Racketeering Conspiracy, 18 U.S.C. § 1962(d); (2) Violent Crime in Aid of Racketeering Activity, 18 U.S.C. § 1959(a)(1) and (2); (4) Use of a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. §§ 924(c)(1), 924(j)(1) and (2); (5) Violent Crime in Aid of Racketeering Activity, 18 U.S.C. § 1959(a)(1) and (2); (8) Use of a Firearm During a Crime of Violence; 18 U.S.C. §§ 924(c)(1), 924(j)(1) and (2); and (9) Drug Conspiracy, 21 U.S.C. § 846. (*See*

Indictment, Oct. 28, 2008, ECF No. 1). Dunlap has been indicted on four counts: (1) Racketeering Conspiracy, 18 U.S.C. § 1962(d); (5) Violent Crime in Aid of Racketeering Activity, 18 U.S.C. § 1959(a)(1) and (2); (7) Use of a Firearm During a Crime of Violence; 18 U.S.C. §§ 924(c)(1), 924(j)(1) and (2); and (9) Drug Conspiracy, 21 U.S.C. § 846. (*See* Indictment, Oct. 28, 2008, ECF No. 1).

Booth[1] argues that a joint trial with Taylor and Dunlop will prejudice his defense because the jury may not be able to compartmentalize certain evidence against the other Defendants that is not admissible against him. Booth notes that he is charged with no underlying drug offense, and that the evidence of underlying drug crimes the Government is expected to adduce at trial against the other Defendants may be improperly considered by the jury to implicate him in the drug or racketeering conspiracies. The specific trial right Booth implicates here is the right against the jury's consideration of inadmissible evidence.

First, Booth notes that he is charged with no underlying drug offense, so there is no risk that he will be convicted of any drug offense. Second, insofar as he fears the jury will consider evidence that is inadmissible against him in order to convict him of the racketeering or drug conspiracy offenses, Booth simply identifies no particular evidence. Unless and until he does, the Court cannot consider whether such evidence would be inadmissible as against Booth with respect to the racketeering or drug conspiracies for irrelevance or other reasons. Where the trial right allegedly at risk because of a joint trial is the admission of evidence that is inadmissible as against the moving defendant, in order to show a serious risk of prejudice by failure to sever, Booth must identify particular evidence and show why that evidence is inadmissible as to him and explain why a limiting instruction would be insufficient. He has made no such showing. It is possible that many pieces of evidence proffered at trial, including evidence of the underlying drug crimes, will be admissible to prove either conspiracy. After all, liability for a conspiracy

---

[1] Dunlap's arguments are similar, though much briefer than Booth's.

requires only an agreement to conspire plus an affirmative act in furtherance of the conspiracy by one of the conspirators. Therefore, evidence of underlying drug offenses is extremely relevant to proving a drug conspiracy against even those conspirators who are not alleged to have been involved in the actual underlying offense(s). Third, Booth himself notes that evidence of the drug conspiracy may be a critical part of the Government's evidence to prove a racketeering enterprise. It is likely that evidence of the underlying drug offenses is relevant not only to the drug conspiracy, but also to the racketeering conspiracy charge against Booth. The Government must prove that Booth was a member of the racketeering enterprise. Proving that some members of that racketeering enterprise were involved, *inter alia*, in a drug conspiracy (or even only in underlying drug offenses) is one way to prove the existence of the criminal enterprise.

Next, Booth argues that none of the evidence available so far connects him to any casino robberies or murders. But Booth simply argues that he is not guilty of certain crimes. He does not identify what particular evidence concerning these crimes is inadmissible as against him and will unfairly implicate him in the crimes with which he has been charged.

Finally, Booth argues that he and the other Defendants may present antagonistic and mutually exclusive defenses. Booth argues that because he, Taylor, and Dunlap are all accused of the murder of Billy Thomas, the possibility exists that they will all point their fingers at one another, creating mutually exclusive defenses. Booth admits that he does not yet know what the Government will try to prove. Perhaps the Government will try to prove that one of these Defendants pulled the trigger, while the others aided and abetted. The risk of prejudice from mutually exclusive defenses requiring severance arises only "when acquittal of one codefendant would necessarily call for the conviction of the other." *Tootick*, 952 F.2d at 1081. It is possible that each Defendant will point at the other, but it is also possible that the jury will believe neither the Government nor any of the Defendants, resulting in acquittals for all of them. Here, the

requires only an agreement to conspire plus an affirmative act in furtherance of the conspiracy by one of the conspirators. Therefore, evidence of underlying drug offenses is extremely relevant to proving a drug conspiracy against even those conspirators who are not alleged to have been involved in the actual underlying offense(s). Third, Booth himself notes that evidence of the drug conspiracy may be a critical part of the Government's evidence to prove a racketeering enterprise. It is likely that evidence of the underlying drug offenses is relevant not only to the drug conspiracy, but also to the racketeering conspiracy charge against Booth. The Government must prove that Booth was a member of the racketeering enterprise. Proving that some members of that racketeering enterprise were involved, *inter alia*, in a drug conspiracy (or even only in underlying drug offenses) is one way to prove the existence of the criminal enterprise.

Next, Booth argues that none of the evidence available so far connects him to any casino robberies or murders. But Booth simply argues that he is not guilty of certain crimes. He does not identify what particular evidence concerning these crimes is inadmissible as against him and will unfairly implicate him in the crimes with which he has been charged.

Finally, Booth argues that he and the other Defendants may present antagonistic and mutually exclusive defenses. Booth argues that because he, Taylor, and Dunlap are all accused of the murder of Billy Thomas, the possibility exists that they will all point their fingers at one another, creating mutually exclusive defenses. Booth admits that he does not yet know what the Government will try to prove. Perhaps the Government will try to prove that one of these Defendants pulled the trigger, while the others aided and abetted. The risk of prejudice from mutually exclusive defenses requiring severance arises only "when acquittal of one codefendant would necessarily call for the conviction of the other." *Tootick*, 952 F.2d at 1081. It is possible that each Defendant will point at the other, but it is also possible that the jury will believe neither the Government nor any of the Defendants, resulting in acquittals for all of them. Here, the

acquittal of one Defendant will not necessitate the conviction of another. *See id.* Each Defendant is absolutely free not to implicate himself by admitting his presence at the scene. If any Defendant wishes to so implicate himself by offering testimony that he was present but that another Defendant committed the crime with no aid from him, he risks that the jury will believe his testimony as to his presence but not as to his innocence. A Defendant who was not at the scene may so testify, and the jury may believe him or not based on all the evidence adduced. And any Defendant may refuse to testify at all, requiring the Government to prove its case without his aid. The Court will, of course, instruct the jury that each Defendant's guilt or innocence must be separately considered.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions to Sever (ECF Nos. 508, 533) are DENIED.

IT IS SO ORDERED.

Dated this 31st day of October, 2011.

_____
ROBERT C. JONES
United States District Judge