UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> STEVEN BOOTH et al., ) <br> ) <br> Defendants. ) <br> ) | 2:08-cr-00283-RCJ-RJJ <br><br> **ORDER** |

**I.     INTRODUCTION**

On October 28, 2008, a grand jury returned an Indictment charging Defendants with having engaged in a RICO enterprise, the "Playboy Bloods" street gang. Defendants Stephen Booth, Jacorey Taylor, Reginald Dunlap, and Marquette Tillman have also been charged with committing a violent crime (murder) in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(1) and (a)(2). Those four Defendants await trial. The Attorney General has declined to pursue the death penalty against them. The other six Defendants have pled guilty to various charges, and any remaining charges against them have been dismissed. Pending before the Court are Booth's, Dunlap's, and Tillman's separate motions in limine, as well as Booth's motion for the Court to reconsider its denial of his previous motion to sever.

**II.    LEGAL STANDARDS**

A motion in limine is a procedural device to obtain an early and preliminary ruling on the

admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co*., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to

change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## III. ANALYSIS

### A. Motions in Limine

As the Government notes in its reply, there is no statute or rule requiring it to have filed its Notice of Intent to Introduce Evidence Proving Racketeering, Conspiracy, and the Defendants' Roles in the Enterprise (ECF No. 574) (the "Notice"). The Court will therefore treat Defendants' objections to the Notice as motions in limine.

Booth asks the Court to exclude certain evidence identified in the Notice under Rules 402 and 403. First, Booth notes that the Court has preliminarily determined to exclude evidence of Booth's 2006 conviction (Act F.2) for the purpose of proving the current charges except for the purposes of impeachment, motive, opportunity, intent, etc. The Court's order stands in this regard. Evidence of the conviction itself is inadmissible except for impeachment, motive, intent, etc.; however, evidence of the underlying acts may be admissible if it tends to show RICO enterprise membership.

Second, Booth argues that the Court should exclude evidence of a match between shell casings found at the crime scene where a witness saw Booth firing a firearm (LVMPD Evet No. 050120-3349) and a casing found at the New Year's Eve shooting (Act B.1). Booth, however, simply argues the weight and value of the evidence and does not explain why the evidence should be inadmissible under the evidence rules.

Third, Booth notes that the Court has preliminarily determined to exclude evidence of Booth's 2003 arrest (Act I.1), as well as his prior citations for trespass and other contact with law enforcement unless introduced to show intent, opportunity, motive, etc. The Court notes that

evidence of the arrests and citations may be admissible if it tends to show RICO enterprise membership.

Fourth, Booth asks the Court to exclude any evidence tending to show his membership in the Playboy Bloods, because evidence of gang membership may be unduly prejudicial. The Court denies this request. If Booth were charged only with crimes totally unrelated to his membership in a RICO enterprise, the prejudice resulting from the admission of evidence that he was a gang member may substantially outweigh its probative value. However, here, where Booth is charged with a violent crime in aid of a RICO enterprise, i.e., the Playboy Bloods, evidence that he is a member of that gang is necessarily not more prejudicial than probative. Because increasing one's stature in a criminal enterprise is an element of the VICAR crime itself, evidence of membership is only "prejudicial" *because* of its probity. The jury will be instructed that it must find Booth is individually guilty of violating each of the elements.

Fifth, Booth notes that the Court has preliminarily ruled that bad acts of other Defendants or non-parties will not be excluded, but that Booth will be entitled to a limiting instruction. That order stands. The Court will not exclude the bad acts of others that the Government has identified in its Notice.

Sixth, Booth asks the Court to exclude acts that occurred while he was incarcerated. The Court denies this request. *See infra*, Part III.B (citing *United States v. Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004); *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992)).

Dunlap asks the Court to exclude certain evidence because it is not "inextricably intertwined" with charged offenses and hence not subject to the Rule 404(b) character evidence exception. The evidence he identifies, however, is relevant to proving his membership in the RICO enterprise.

Dunlap also asks the Court to exclude evidence of his prior state court drug convictions and additional arrest unless used for impeachment or to show motive, intent, etc. Evidence of

the convictions is inadmissible except for impeachment, motive, intent, etc.; however, evidence of the underlying acts may be admissible if it tends to show RICO enterprise membership.

Tillman asks the Court to exclude evidence identified in the Notice mainly based upon the alleged failure of the Government to provide certain discovery. Tillman must submit any motions to compel to the magistrate judge. He does not appear to move under Rule 37 to exclude the identified evidence. Rather, Tillman asks the Court to order the Government to divulge every bit of evidence of "acts" it intends to use at trial so that Tillman may object to it, piece-by-piece. There is no rule requiring the Government to divulge its trial strategy in this way. Tillman may object to particular evidence if he has a basis for an objection.

Tillman next asks the Court to exclude evidence of an assault against Vernon Swinson, during which the attackers accused Swinson of informing against Tillman, because there is no link between the assault and Tillman. The Court will not exclude this evidence simply because there is no evidence Tillman himself participated in the assault. This evidence shows a purpose and motive of the participants in protecting the enterprise and its participants, including Tillman.

Tillman asks the Court to exclude evidence of the Crosby homicide because it is unrelated to the Wilcox homicide. According to Tillman, Crosby, a supposed Crips gang member, was killed by Kijani Owens, a Piru gang member from Los Angeles with no relationship to the Playboy Bloods. Unless the Government can show some predicate link to the Playboy Bloods, this evidence will be excluded.

Tillman asks the Court to exclude evidence that several people in a vehicle fired shots at Crosby's friends after he was killed, and that some casings from this shooting match the weapon used to kill Wilcox. The Court will not exclude this evidence, as it could link the perpetrators of the Wilcox shooting to the drive-by shooting that could be used to show a criminal enterprise. Tillman denies the gun was his no matter how many shootings it was involved in, but this is a matter of evidence for the jury.

Tillman asks the Court to exclude two guns and a small amount of crack cocaine found during a search of 3650 E. Lake Mead. Tillman argues that the guns have not been linked to any crimes and that the quantity of drugs found is not enough to imply sales. However, the possession of multiple firearms and drugs is relevant to proving a criminal enterprise, particularly a drug-based criminal enterprise. The Court will not exclude this evidence based upon Tillman's assessment of its weight.

Tillman asks the Court to exclude any evidence concerning the Thomas homicide as against him, however, he does not argue why any of it is inadmissible under the rules. He argues that he was in jail during the crime. However, this does not mean that the evidence cannot be used to prove the existence of a criminal enterprise of which he was also a part.

Tillman asks the Court to exclude evidence of Dunlap and Taylor's drug convictions. The Court denies this request. This evidence is admissible to prove a criminal enterprise. Again, Tillman argues the weight of the evidence, but relevance under Rule 401 requires only "any tendency" to make a matter in issue more or less likely to be true. For similar weight-of-the-evidence-type reasons, Tillman asks the Court to exclude certain evidence discovered during searches. Tillman can argue the weight of the evidence to the jury. Tillman next asks the Court to exclude evidence of contacts between alleged Playboy Bloods members and the police, including Tillman, but again he argues the weight of the evidence, not its relevance.

Next, Tillman asks the Court to exclude evidence of his conviction for attempted murder. The Court will not exclude this evidence, as it is relevant to showing Tillman's relation to the Playboy Bloods gang, as well as a criminal enterprise.

Tillman asks the Court to exclude evidence of three casino robberies in 2002. Tillman argues that these robberies had nothing to do with the alleged criminal enterprise at the Sherman Gardens complex. The Court will exclude this evidence if the Government can provide no link showing that the robberies were in furtherance of the enterprise.

Tillman asks the Court to exclude evidence of autopsy photos, but Tillman's explanation of this request is unclear. He claims not to know which victim the photos relate to and does not argue why they should be excluded.

Tillman asks the Court to exclude evidence of an incident at a VFW where Booth was denied admission after apparently placing a handgun under a car. The Court will exclude this evidence if unrelated to the criminal enterprise.

Tillman asks the Court to exclude a statement by Tillman after a shooting at the Civic Center that he had admitted gang membership. Tillman notes he has filed a separate motion to suppress. Otherwise, he argues based upon the weight of the evidence.

Tillman asks the Court to exclude evidence that police recovered a handgun after pulling over Burns and Taylor. The Court will not exclude this evidence, as it may be relevant to proving a criminal enterprise.

Tillman asks the Court to exclude evidence that Taylor and Cherry were shot at a dice game on I Street, where drugs were also found at the scene. Tillman argues that there is no evidence the incident concerned gang rivalries, but this is a matter for the jury. The Court will not exclude it as irrelevant.

Tillman asks the Court to exclude evidence that police found an unregistered handgun in the car when they stopped Taylor, Burns, and Cherry, and that the police identified Taylor as a gang member. The Court will not exclude this evidence, as it may be relevant to proving a criminal enterprise.

Tillman asks the Court to exclude evidence of an incident where he and others were detained by the Housing Authority for occupying a vacant house where the reports indicate no drug, weapons, or other gang-type activity. The Court will not exclude this evidence, as it is relevant to showing association and a location for conducting the alleged RICO enterprise.

Tillman asks the Court to exclude evidence of an incident where Taylor's aunt called the

police because Taylor was suicidal. Taylor was transported to the hospital on a "mental health hold." One officer "tagged" the incident as gang-related and noted that Taylor admitted to selling drugs and being a member of the Playboy Bloods, but two other officers noted that the incident was not gang-related. The Court will not exclude evidence that Taylor made a party admission if relevant to proving his membership in the Playboy Bloods or the existence of the gang as a criminal enterprise, but the Government will have to provide either the officer who heard the admission or identify a hearsay exception. The incident itself appears otherwise irrelevant.

Tillman asks the Court to exclude evidence that police found a handgun in Taylor's car and arrested him on outstanding warrants. The Court will not exclude this evidence.

Tillman asks the Court to exclude evidence of an incident where Booth and Burks were nearby when Piru gang member David North shot Northtown Gangster Crip gang member Terrance McClodden at the Sherman Garden complex because no Playboy Bloods are alleged to have been involved. The Court will exclude this evidence unless the Government can show a connection between the incident and the Playboy Bloods.

Tillman asks the Court to exclude evidence that Dunlap was shot in a drive-by shooting where the only evidence for a motive concerns a dispute over a woman named Ann. The Court will exclude this evidence unless the Government can show that the incident related to a dispute between the Playboy Bloods and another group or individual and was not a purely personal matter.

Tillman asks the Court to exclude evidence of Defendants' gang tattoos. The Court will not exclude this evidence, as it is relevant to gang membership. Defendants may argue to the jury the weight of the evidence, i.e., whether their tattoos have anything to do with gang affiliation.

Tillman asks the Court to exclude evidence that certain Defendants' residences or places

1 under their control were used as "drug houses." Again, Tillman argues the weight of the
2 evidence and does not identify specific evidence for exclusion as to most of the alleged drug
3 houses.

4 Tillman asks the Court to exclude evidence of certain photographs of Playboy Bloods and
5 rap music wherein Tillman may have recorded some of the lyrics. The Government will have to
6 provide a foundation for admission, but at this time, Tillman does not identify why this evidence
7 is necessarily inadmissible.

8 Tillman asks the Court to exclude evidence of a prison security threat group ("STG")
9 assessment on Tillman that he refused to sign. Tillman objects to the procedure for identifying
10 him as a threat. Tillman simply disputes the correctness of the evidence, however. He does not
11 argue as to its inadmissibility. The Court will not exclude this evidence.

### B. Motion to Reconsider

13 Booth filed the present motion for reconsideration on May 21, 2012, 202 days after the
14 Court denied his Motion to Sever (ECF No. 508). (*See* Order, Nov. 2, 2011, ECF No. 576).
15 Although labeled as a successive motion to sever, it is in substance a motion to reconsider.

16 Booth argues that in order to defend against certain enterprise evidence that is admissible
17 against other Defendants, he will have to testify that he was incarcerated during certain events
18 and therefore cannot have been involved. Booth argues that this testimony will prejudice the
19 jury against him, because it will sully his character, and that the failure to sever his trial from
20 Taylor's and Dunlap's therefore prevents him from presenting an individual defense. Booth
21 argues that a limiting instruction will be insufficient to cure the resulting prejudice resulting
22 from the jury learning of Booth's prior conviction. The Government notes that it would adduce
23 the same evidence to prove the existence of the RICO conspiracy even if Booth's trial were
24 severed.

25 The Court will deny the motion. Booth can have still been a member of the enterprise

1  while in jail, directing and/or profiting from it with knowledge of its continued activities.

2  Therefore, Booth's testimony that he was in jail will only tend to show he was not personally

3  involved in the activities, not that he was not a member of the enterprise. In other words,

4  testimony that he was incarcerated at the time is simply no evidence that he was not a member of

5  the enterprise, but only evidence that he did not participate in certain particular crimes that are

6  not charged against him in any case.

7  Booth also argues that he had no involvement in fifteen acts by Taylor and five acts by

8  Dunlap identified by the Government in its Notice. Booth argues that a jury cannot reasonably

9  be expected to compartmentalize all the evidence in this case against the appropriate Defendants.

10 *See United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir. 1993). The Government correctly

11 responds that evidence relevant to proving a RICO conspiracy—such as evidence related to drug

12 trafficking and violent acts in this case—is admissible against any defendant charged with being

13 a member of the RICO conspiracy even if not all such defendants were involved in each of the

14 acts used to prove the conspiracy's existence. *See DiNome*, 954 F.2d at 843. A trial court can

15 give limiting instructions in RICO/VICAR cases to reduce or eliminate any confusion or

16 prejudice. *See Fernandez*, 388 F.3d at 1243 (collecting cases).

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions in Limine (ECF Nos. 695, 701, 713) and Joinders thereto (ECF Nos. 703, 704, 706, 707, 708, 722) are GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Motion to Reconsider (ECF No. 705) is DENIED.

IT IS FURTHER ORDERED that the Government shall within fourteen (14) days of the entry of this Order into the electronic docket file a memorandum explaining its foundation for the admission of any evidence identified in the present Order with respect to which the Court has noted that additional foundation may be necessary.[1]  Defendants shall have seven (7) days after the Government files its memorandum into the electronic docket to object.

IT IS SO ORDERED.

DATED: This 6th day of September, 2012.

_____
ROBERT C. JONES
United States District Judge

---

[1]This includes evidence of the Crosby homicide, the 2002 casino robberies, the VFW incident, Taylor's mental health issues (apart from his alleged admission), the McClodden shooting, and the Dunlap shooting.