RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
SHARI L. KAUFMAN
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(Fax) 388-6261

Attorney for **Steven Booth, Jr.**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | 2:08-cr-00283-RCJ-PAL |
|---|---|
| Plaintiff, | DEFENDANT BOOTH'S SENTENCING MEMORANDUM |
| vs. | |
| STEVEN BOOTH, JR., | |
| Defendant. | |

COMES NOW, the defendant STEVEN BOOTH, JR., by and through counsel, Shari L. Kaufman, and hereby submits this Sentencing Memorandum support of sentencing on April 10, 2013, at 12 PM.

This Memorandum is made and based upon the points and authorities attached hereto, all prior proceedings had herein.

DATED this 5th day of April, 2013.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Shari L. Kaufman*
SHARI L. KAUFMAN
Assistant Federal Public Defender

## MEMORANDUM OF POINTS AND AUTHORITIES
## **FAMILY HISTORY**

The childhood of Steven Booth, Jr., in many way predicted his appearance before this court. Steven Booth, Jr., (hereinafter as "Steven), was born on March 17, 1985. Less than three years after his birth in June 1988, both his parents were arrested for posession of controlled substance with intent to distribute. Two months later, his mother and his maternal uncle were arrested again for conspiracy to distribute cocaine and possession with intent to distribute. Both parents receive Probation. Within the next six months, Steven's mother tests positive for marijuana and cocaine on at least three occasions, Child Protective Services ( hereinafter as "CPS"), took no action and the children remain in the home with a parent who is using narcotics in the home.

Less than one year after being placed on probation, both Steven's parents were arrested for domestic violence. The home where the children lived had no electricity and no food. CPS does an investigation of the house and determines even though the father had been released from custody, none of the children had been going to school. The backyard was full of trash dumped by Mr. Booth's family. Still, the judicial system sees fit to leave the children in the home and continue the parents on probation.

In December 1989, a probation violation was filed as Mr. And Mrs. Booth (parents) possessed a loaded pumpmaster pellet gun, which was found in a cabinet. In January 1990, Mr. Booth was again arrested for domestic violence. The three Booth children were allowed to remain in the home. On January 8, 1990, Mr. Booth's mother was again arrested for posession of a weapon and submitted a drug sample positive for cocaine. The three children continued to remain in the home.

On March 17, 1990, Steven turned five years old. One month later, his mother began a period of incarceration at the Womens Correctional Center. Two months later, his father was sentenced to a custodial term on a probation violation. Steven's grandmother took custody of his two sisters. Steven however, was not given a stable home to live in (no child welfare supervision), he lived with numerous family members. He attended two different schools during his kindergarten

1  years. His school records indicate they were unable to get anyone to respond to messages sent home
2  and that Steven was a child who obviously has no assitance at home.
3      Both his parents are released from custody and retrieved Steven from family members. They
4  also secured benefits for the family. In 1991, because they had a minor child,, they received food
5  stamps and housing assistance. On July 15, 1992, less than six months after getting Steven back from
6  family members, CPS files an abuse/neglect proceeding against Steven's parents. One month later,
7  Steven's mother begins yet another prison sentence. Steven began 2nd grade at Craig Elementary.
8  He attends Craig Elementary for three months before he is transferred to Rowe Elementary. He
9  remained at Rowe Elementary for four months and is transferred to Pittman Elementary for the
10 remainder of 2nd grade year. Each school move coincides with a change in where Steven is living.
11     A note from his CCSD counselor states, " I was quite concerned about this child. In
12 speaking with his teachers from last year, they felt he was the 'most at risk child at Craig.'" The
13 environmental checklist that was completed on Steven identified ten items. "My concern is for the
14 safety and well being of this child." The counselor also indicated they were unable to conduct any
15 type of health assesment because he was frequently absent, and even when he was there, he was non-
16 responsive with a flat affect. At the time of this assessment, Steven had not yet turned eight years
17 of age.
18     From 1993-1995, Steven Booth's mother was incarcerated, and his father sustained arrests
19 for battery, domestic violence and loitering for drugs. Steven attended four different schools in 4th
20 grade, as he was cared for intermittently by various family members. In August 1995, yet another
21 abuse/neglect complaint was filed concerning Steven Booth. In 1995 Steven began 5th grade at yet
22 another elementary school. His parents were in and out of State custody and clearly abusing
23 narcotics. A CCSD evaluation indicated, "he is unable to read near grade level or follow simple
24 directions." The evaluation indicated he had a learining disability and required special services. No
25 parent attended any of these meetings.
26     In 1996 Steven begins 6th grade at Cashman Middle School, he is reading on a 3rd grade level,
27 but is progressing. During this year, his father is released from yet another custodial term and again
28 regains custody of Steven. He transfers Steven to Gibson Middle School in the middle of 7th grade.

Steven's mother is arrested twice that year. Yet another abuse/neglect complaint is filed concerning Steven's care, Steven is still not removed from the home.

Steven attended: Bridger Middle School in 1998, Mohave High school in 1999, Valley High School in 2000, Spring Mountain High School in 2001, and Palo Verde High School in 2002. During the time he resided with his father/mother he attended 12 different schools in 14 years. He was the subject of 6 abuse/neglect petitions, yet was never removed from the parent's home. (Except during they were both incarcerated.) Each time one of his parents was released from Prison, they reclaimed Steven so they could get public assistance benefits and housing opportunities.

When Steven Booth Sr., took custody of his son at aged 11, Steven Booth Sr., was a drug addict. He allowed gang members to use his apartment to shoot up and distribute narcotics. The house was chaotic, day and night and Steven was exposed to the "gang mentality" that ran not only his neighborhood, but in his father and the very apartment he lived in (paid by taxpayers). Despite filing petition after petition, indicating that Steven was being abused and neglected, CPS and the family court system failed Steven as he never had a stable home and was allowed to remain with parents who were obviously abusive and neglectful.

The environment that Steven Booth grew up in is why he is before this court today. We clearly are not making any excuses for his actions, but want the court to understand that the life he lived prior to his arrest was the only life he was exposed to. He never lived in a home where people worked for a living. He never lived in a home where schoolwork was praised. He lived in homes where money given to his parents by the government for food, electricity and clothing for him was instead spent on narcotics for his parents. He lived in a house with no electricity, no food and almost nothing to wear. His father's home was run and controlled by gang members and was basically a crack house. That is the life that Steven Booth lived prior to his involvement in the instant case.

Steven's involvement in gangs stem from both the neighborhood he lived in, the fact that the Gang members "ran" his fathers house, as well as the need to be part of a community, since obviously he had no family to rely on, either economically or emotionally.

///

///

### I. *Defendant Booth's Request for a 26 Month Variance*

The conduct underlying the instant offense occurred in 2004, almost 10 years ago. The government indicted this case in 2008. At the time of the indictment, Mr. Booth was serving a state court sentence. Had he not been indicted on the instant case, which predates the case he was serving state time on, he would have been released 26 months prior to the time he was released to the federal detainer. The timing of the federal court indictment caused him to expire his state term, rather than be paroled. This occurred even though the conduct in the instant case occurred prior to his conviction and would not ordinarily have been able to be used to extend his release date. Fairness would dictate that the timing of an indictment should not extend a defendant's period of incarceration. Mr. Booth would respectfully request this court grant him the 26 months variance to account for this time.

### II. *Alternatively, Defendant Would Request for a 26 Month Departure Based on Overrepresentation of Criminal History*

An additional basis for the requested 26 month credit is a departure based on overrepresentation of criminal history. Steven Booth, Jr., is currently 28 years old. He is receiving 3 points for juvenile criminal conduct that occurred in excess of 12 years ago, when he was 15 and 16 years old. As previously indicated in the objections filed, there is some dispute as to whether the offenses reflected in paragraphs 105, and 106 were consolidated for sentencing and should therefore result in only one criminal history point. As previously noted, these records are no longer available, and Probation is looking solely at a prior PSR in assessing these points. That prior PSR being used by Probation has never been by Mr. Booth and contains basic errors in family background, including whether he had been married, and whether he had children. As such, Mr. Booth would continue to object that such documents are not sufficiently accurate to be judiciously recognizable. However, even if this court were to believe these documents are recognizable, it is the contention of the defense, that these offenses are so long ago in time, and so minor in nature that they should not be countable in Mr. Booth's criminal history calculation. Absent even one of these points, Mr. Booth's criminal history category would be a category 3, with a corresponding guideline range of 210-240

///

months. Mr. Booth would respectfully request this court sentence him to a term of imprisonment of 214 months which would be within the adjusted guideline range.

## CONCLUSION

Based on the totality of the circumstances and the timing of the indictment, Mr. Booth would respectfully request this court sentence him to a period of imprisonment of 214 months, which would account for the excess time the state authorities kept him in custody based solely on the timing of the indictment.

Respectfully submitted this 5th day of April, 2013.

RENE L. VALLADARES
Federal Public Defender

*/s/ Shari L. Kaufman*
By:_____
SHARI L. KAUFMAN
Assistant Federal Public Defender
Counsel for Steven Booth, Jr.

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Law Offices of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on April 5, 2013, she served an electronic copy of the above and foregoing DEFENDANT BOOTH'S SENTENCING MEMORANDUM, she served an electronic service (ECF) to the person named below:

DANIEL G. BOGDEN
United States Attorney
NICHOLAS D. DICKINSON
Assistant United States Attorney
333 Las Vegas Blvd. So., 5th Floor
Las Vegas, Nevada 89101

Via Electronic Transmission:

UNITED STATES PROBATION
LEONEL SANCHEZ
United States Probation Officer

/s/ Blanca Lenzi
_____
Employee of the Federal Public Defender